**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**LYNETTE BROWN,**

      **Plaintiff,**

**vs.**                     **Case No. 4:09cv171-RS/WCS**

**FLORIDA DEPARTMENT OF
HIGHWAY SAFETY AND MOTOR
VEHICLES,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

After Defendant filed a motion to dismiss on November 6, 2009, doc. 11, an order was entered directing the *pro se* Plaintiff to file a response in opposition. Doc. 12. Plaintiff's responded on November 25, 2009, noting that Defendant "did not in good faith pursuant to N.D. Fla. Loc. R. 7.1(B) attempt to contact Plaintiff to confer" before filing the motion to dismiss. Doc. 13. Plaintiff's point was well taken, and the parties were directed to confer as to the issues raised in Defendant's motion. Doc. 14.

Defendant filed a notice of conferral on January 12, 2010, stating the parties "were unable to reach a resolution and wish to proceed with the case." Doc. 15. Defendant requested consideration of its motion to dismiss. *Id.*

Plaintiff, *pro se*, file a response to Defendant's motion to dismiss. Doc. 16. The motion is now ready for a ruling.

**Basis for motion to dismiss, doc. 11**

Defendant contends that Plaintiff's amended complaint does not comply with the requirement of Rule 8(a)(2), that it present sufficient facts demonstrating the discrimination claim is plausible. Doc. 11, p. 2-3. Defendant contends Plaintiff fails to identify "a single instance of any race-motivated action." *Id.*, at 3. Defendant further asserts that the complaint fails to establish three of the four elements necessary to present a claim under the *McDonnell Douglas* test.[1] *Id.*, at 4. Defendant argues that Plaintiff's amended complaint fails to allege facts sufficient to establish a retaliation claim. *Id.*, at 5. Defendant also contends Plaintiff failed to exhaust administrative remedies as to a state law "whistle blower" claim, *Id.*, at 6, that her age discrimination claim is improper against a state agency, *Id.*, at 6-7, and finally, that collateral estoppel applies to preclude litigation of factual matters. *Id.*, at 7-8.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the

---

[1] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

> In order to establish a prima facie case, and thus raise an inference of discriminatory intent, the plaintiff must demonstrate only that: (i) he or she belonged to a protected class; (ii) he or she was qualified for and applied for a position that the employer was seeking to fill; (iii) despite qualifications, he or she was rejected; and (iv) the position was filled with an individual outside the protected class.

Vessels v. Atlanta Independent School System, 408 F.3d 763, 768 (11th Cir. 2005).

plaintiff has alleged enough plausible facts to support the claim stated. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from <u>Conley v. Gibson</u>, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that dismissal should not be ordered unless it appears beyond doubt that plaintiff could prove "no set of facts" in support of her claims which would entitle her to relief). The pleading standard is not heightened, but flexible, in line with the command of Rule 8, to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). A complaint does not need detailed factual allegations to survive a motion to dismiss, but it must provide the grounds for a plaintiff's entitlement to relief beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." <u>Twombly</u>, 127 S.Ct. at 1964-65.

> If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56.

<u>Swierkiewicz</u>, 122 S.Ct. at 998-999.

The complaint's allegations must be accepted as true when ruling on a motion to dismiss, <u>Oladeinde v. City of Birmingham</u>, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." <u>Twombly</u>, 127 S.Ct. at 1965, *quoting* <u>Neitzke v. Williams</u>, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). *Pro se* complaints are held to less stringent standards than those drafted by an attorney.

Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986), citing Haines v. Kerner, 404

U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). Nevertheless, a

complaint must provide sufficient notice of the claim and the grounds upon which it rests

so that a "largely groundless claim" does not proceed through discovery and "take up

the time of a number of other people . . . ." Dura Pharmaceuticals, Inc. v. Broudo, 544

U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), *quoted in* Twombly, 127 S.Ct. at

1966.

**Allegations of the Amended Complaint, Doc. 5**

Plaintiff used the complaint form for filing a Title VII suit and an Age

Discrimination in Employment Act claims. Doc. 5. She sues a Florida state agency. *Id.*

She does not allege any claims against any individual pursuant to 42 U.S.C. § 1983. *Id.*

Plaintiff alleges that on April 26, 2006, she "asked the Director of Administrative

Services for the opportunity to advance in employment with the Agency similar to that

given to . . . a white female." Doc. 5, p. 4. Plaintiff names several white and several

younger employees who had been "given positions, other opportunities, and privileges,

while" Plaintiff was "overlooked and denied" an opportunity to advance. *Id.*, at 4-5.

Plaintiff alleged that the Director got "angry, yelled, pounded her fist on her desk and

lunged from behind her desk toward the Plaintiff, thereby creating a very hostile and

threatening environment." *Id.*, at 5. Plaintiff then "verbally notified" the Executive

Director of the Florida Department of Highway Safety and Motor Vehicles of her "grace

concerns about actions taken by the Director of Administrative Services." *Id.*, at 4.

Plaintiff also verbally advised that she had suffered "long-standing disparate

employment treatment, and that the work environment was very hostile." *Id.*

Plaintiff requested a reassignment due to the alleged "hostile conduct" and on May 11, 2006, "filed a written complaint of disparate employment treatment . . . ." *Id.* During a meeting on May 11th, Plaintiff alleges that the Chief, Bureau of Personnel Services "physically kicked the Plaintiff." *Id.* Plaintiff contends the Agency discriminated against her when it denied her request to be reassigned out of the hostile work environment. Further Plaintiff contends that the Agency's denial of Plaintiff's request to "advance in employment," which had been given to "Susan Rene Knight, a similarly situated white female." *Id.*

Further, Plaintiff contends the Agency discriminated against her on the basis or race and retaliated against her for complaining when her employment was terminated on May 24, 2006. *Id.*, at 5. At about 4:00 p.m., Plaintiff was hand-delivered a letter from the Deputy Executive Director (delivered by three sworn law enforcement officers) informing Plaintiff her employment was terminated on the close of business. *Id.*, at 6. When Plaintiff turned in her badge and asked to leave, Plaintiff reports that law enforcement denied her request to leave and said she "would be arrested and taken to jail." *Id.* Plaintiff alleges that she was handcuffed and seized on May 24, 2006, and her "body and purse were immediately seized and searched . . . ." *Id.*, at 6. Plaintiff alleges she was detained "for nearly 3 hours or more in room A101 of the Neil Kirkman Building . . . ." *Id.* At about 7:00 p.m., the Director of the Florida Highway Patrol and the three law enforcement officers "handcuffed and carried the Plaintiff" to the loading dock of the building before removing the handcuffs. *Id.* Plaintiff contends the "very hostile, demeaning, threatening, frightening and, provocative termination action" was discriminatory "due to race." *Id.* Plaintiff asserts her belief that the acts "were racially

motivated and retaliatory" and states that "a white female had not been subjected to such a hostile termination proceeding . . . ." *Id.*

Plaintiff also claims the Agency discriminated against her by not protecting her "from long-standing disparate treatment by the Director of Administrative Services." *Id.*, at 6. Plaintiff contends the Director also failed to protect her "from the demeaning, hostile and threatening behavior of the Chief, Bureau of Personnel Services during the period April 24, 2006 through May 24, 2006." *Id.*, at 7. Plaintiff asserts that the failure to investigate the formal complaint Plaintiff filed on May 11, 2006, was also an act of discrimination. *Id.*; *see also* doc. 5-3, p. 8.

Attached to the amended complaint is Plaintiff's charge of discrimination which further alleged that the Director of Administrative Services had "denied [her] promotional opportunities" although "similarly situated younger white employees have received the promotions [she] requested consideration for." Doc. 5-1, p. 2. The Director allegedly told Plaintiff, "people like you should just be happy to work here where you are." *Id.*

Also attached to Plaintiff's amended complaint was a "statement of disparate employment treatment" prepared by Plaintiff. Doc. 5-3. Within that statement, Plaintiff provides examples of positions for which she states she was qualified, but not even considered, and the jobs were filled by white employees. Doc. 5-3, pp. 6-8. One position was outsourced to an "outside vender," and then a second contract (related to the SAS project) given to the same vendor. Doc. 5-3, p. 6. Plaintiff had developed a system for the Agency's Drug Testing program which was reassigned to a white male with "considerably less experience and expertise" than Plaintiff. *Id.* Plaintiff was denied three positions in the Office of Employee Relations, but a white female, a white male,

and then another white female were selected over Plaintiff.  *Id.*, at 7.  Another position

(Assistant Chief, Bureau of Personnel Services) was given to a white female rather than

Plaintiff.  *Id.*, at 8.  Finally, Plaintiff was denied the position of Training Manager, which

was given to a white female.  *Id.*, at 8.  Plaintiff alleged being given "outstanding

performance reviews" during this time period, but "consistently denied the opportunity to

advance."  *Id.*

**Analysis**

**Not Sufficiently Pled under Rule 8**

Defendant's motion first argues that Plaintiff fails to allege "a single instance of

any race-motivated action."  Doc. 11, p. 3.  Defendant contends the few points Plaintiff

makes are "couched in broad terms" and that Plaintiff does not "allege sufficient facts to

render" this claim, or the retaliation claim, plausible for relief.  *Id.*

While the complaint does not provide detailed allegations, the charge of

discrimination and the statement attached to the amended complaint provide sufficient

examples of alleged discriminatory treatment.  There, Plaintiff alleges that she was a

qualified, black female who sought employment opportunities, but that each of those

opportunities were given to white applicants.  As will be discussed ahead, those

allegations, combined with the broader statements within the amended complaint,

provide sufficient facts to support a claim of discrimination.  Plausibility for such a claim

is well-established by  the *McDonnell Douglas* test.

It is acknowledged that Plaintiff's complaint paints with a broad brush, but the

more detailed factual allegations are within the attachments to the amended complaint.

Copies of documents which are attached as "an exhibit to a pleading is a part thereof for

all purposes." FED. R. CIV. P. 10(c). Thus, the attachments to Plaintiff's amended complaint may be considered along with the complaint. If Defendant needed more facts within the amended complaint, it would have been appropriate to file a motion for more definite statement, or proceed to discovery. As a motion to dismiss, however, the motion is denied as to this ground.

### Failure to State a Claim

Defendant contends Plaintiff has not demonstrated the four elements of the *McDonnell Douglas* test to demonstrate racial discrimination. However, as noted above, Plaintiff's attachments provide those facts. Plaintiff was qualified, had good performance reviews, sought numerous employment opportunities, but all were given persons outside her protected racial class. The motion to dismiss is denied on this basis as well.

Defendant contends Plaintiff fails to state a claim for retaliation. Doc. 11, p. 5. In particular, Defendant argues that Plaintiff does not allege having engaged in statutorily protected activity, or that she was attempting to oppose any unlawful employment practice. *Id.*, at 5.

In the amended complaint, Plaintiff alleges that on April 26, 2006, she "verbally reported" being "subjected to hostile behavior" by the Director of Administrative Services and the Chief, Bureau of Personnel Services. Doc. 5, p. 4. She also reported that several white employees were given "positions, other opportunities, and privileges, while the Plaintiff was overlooked and denied equitable opportunity to advance." *Id.*, at 5. Plaintiff alleged that on May 11, 2006, she filed "a written complaint of disparate employment treatment." She further contends she suffered discrimination when "the

Agency denied the Plaintiff's requested dated May 26, 2006 to investigate the Plaintiff's complaint that was filed May 11, 2006." *Id.*, at 6. In addition, in her charge of discrimination attached to the complaint Plaintiff stated that she "filed a formal written complaint on May 11th against the disparate treatment effected by Mrs. DeLopez and Ms. Knight." *Id.* She requested a temporary assignment "pending the outcome of an internal review" of her situation, but the "request was denied." *Id.* Plaintiff's employment was terminated on Maya 24, 2006, and then Plaintiff filed her charge with the Florida Commission on Human Relations on or about Defendant 4, 2006. Doc. 5-1.

Thus, the allegations reveal Plaintiff opposed allegedly unlawful employment practices by complaining of white employees being advanced while she was not, and Plaintiff alleged being terminated, which qualifies as an adverse employment action. The timing of Plaintiff's termination could be viewed by a reasonable jury as demonstrating a causal connection to her reporting her concerns to the Department. The issue in this case may turn on whether the manner in which Plaintiff reported the allegedly unlawful employment actions (discrimination and disparate treatment) qualifies as "statutorily protected activity." At this point in the litigation, however, and without greater argument from Defendant on this point, Plaintiff must be deemed to have given Defendant sufficient notice of her claim of retaliation and she provided sufficient facts to support that claim. The motion to dismiss should be denied on this point as well.

**Exhaustion of Whistle Blowing Claim**

Defendant asserts that, although it is unclear whether Plaintiff intends to "assert a claim of whistle-blower retaliation, such claim is deficient." Doc. 11, p. 6. It is unclear to me that Plaintiff brings such a claim. See doc. 16, p. 7. The claim would appear to be completely covered by a Title VII retaliation claim and is superfluous. However, I will provide this analysis with the belief that whether such a claim exists may later be clarified by Plaintiff.

Defendant contends that "Plaintiff fails to identify the manner in which she reported the alleged disclosure, the date or dates on which she did so, and the name and position of the person(s) to whom she made such disclosure." *Id.* Under Florida law, three elements must be established to state a cause of action under the Whistle-blower's Act:

> 1) prior to termination the employee made a disclosure protected by the statute; 2) the employee was discharged; and 3) the disclosure was not made in bad faith or for a wrongful purpose, and did not occur after an agency's personnel action against the employee.

Dep't of Transp. v. Florida Comm'n on Human Relations, 842 So.2d 253, 255 (Fla. 1st DCA 2003), *quoted in* Walker v. Florida Dept. of Veterans' Affairs, 925 So.2d 1149, 1150 (Fla. 4th DCA 2006). Plaintiff alleged that in mid-May, prior to her termination, she filed a written complaint. Doc. 5, p. 5. Defendant has not argued that that disclosure was not covered by the statute. It would appear that Plaintiff has adequately alleged this claim, if that was her intent.

Defendant argued that Plaintiff failed to exhaust her administrative remedies as to this claim, but Defendant fails to state what remedies were required and what Plaintiff

failed to do.  Without greater argument from Defendant, the complaint appears sufficient to present this claim, and this basis for dismissal is insufficient.

### Age Discrimination Claim

Defendant moves to dismiss the age discrimination claim on the basis that agencies of the State of Florida are protected by the Eleventh Amendment, and Eleventh Amendment immunity is applicable to claims brought under the Age Discrimination in Employment Act (hereinafter "ADEA").  Doc. 11, pp. 6-7.  Plaintiff contends that her claim out to go forward, but does not present a basis to do so.

The United States Supreme Court has clearly held the ADEA was not "a valid exercise of Congress' power under § 5 of the Fourteenth Amendment." Kimel v. Florida Bd. of Regents, 528 U.S. 62, 91, 120 S.Ct. 631, 650 (2000).  Thus, it cannot abrogate the state sovereign immunity as provided for in the Eleventh Amendment.  Plaintiff's age discrimination claim must be dismissed.

### Collateral Estoppel

Defendant contends that the "issues underlying Plaintiff's claims are identical to those from Plaintiff's action before the Division of Administrative Hearings ("DOAH"). Doc. 11, p. 7.  Defendant asserts that Plaintiff had a "full and fair opportunity to litigate her claims" in the DOAH hearing, presided over by an Administrative Law Judge, "who resolved the issues of fact properly before the tribunal." *Id.*  Defendant argues that caselaw from the Eleventh Circuit Court of Appeals supports the notion that "the fact-finding should be given the same preclusive effect to which it would be entitled in the state courts."  Doc. 11, pp. 7-8, *citing* Quinn v. Monroe County, 330 F.3d 1320, 1329 (11th Cir. 2003), and explaining the Quinn concluded "preclusive effect is given to

factual findings of state agencies when the agency acts in a judicial capacity and
resolves factual issues."

In <u>Quinn</u>, *supra*, the Eleventh Circuit was reviewing summary judgment in a §
1983 civil rights action in which the appellant claimed she had been terminated as
Library Director in retaliation for exercising her First Amendment rights.  330 F.3d at
1322.  After being terminated, Quinn appealed to the Career Service Council, and then
filed a petition for review in the Monroe County Circuit Court.  *Id.*, at 1323.  That court
determined that Quin "failed to make a prima facie showing that the Council departed
from the essential requirements of the law in determining the appeal of her dismissal
and that the Council's decision was supported by substantial evidence."  *Id.*, at 1324.
Thereafter, Quinn filed her § 1983 action in federal court.  *Id.*  Ultimately, the Eleventh
Circuit held that Quinn was not collaterally estopped from bringing the case against the
County Administrator, James Roberts, because he was not a party to the prior litigation
and, thus, not bound by the prior judgment.  *Id.*, at 1325, 1330, and 1333.

The Eleventh Circuit explained the doctrine of collateral estoppel as follows:

Collateral estoppel, i.e., issue preclusion, refers to the effect of a judgment in
foreclosing relitigation of a matter that has been litigated and decided.  *See David
Vincent, Inc. v. Broward County*, 200 F.3d 1325, 1331 n. 10 (11th Cir. 2000).  We
give preclusive effect to the judgment of a state court provided that two
conditions are met: (1) the courts of the state from which the judgment emerged
would do so themselves; and (2) the litigants had a full and fair opportunity to
litigate their claims and the prior state proceedings otherwise satisfied the
applicable requirements of due process.  *Shields v. Bellsouth Adver. & Publ'g
Co., Inc.*, 228 F.3d 1284, 1288 (11th Cir. 2000).  Similarly, when a state agency
acts in a judicial capacity and resolves issues of fact properly before it which the
parties have had an adequate opportunity to litigate, we give the agency's
fact-finding the same preclusive effect to which it would be entitled in the state
courts.  *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799, 106 S.Ct. 3220, 92
L.Ed.2d 635 (1986); *Travers v. Jones*, 323 F.3d 1294, 16 Fla. L. Weekly Fed.
C405, C406 (11th Cir. 2003).  The preclusive effect applies even where the

agency's fact-finding is not reviewed by a state court. *See Univ. of Tenn. v. Elliott*, 478 U.S. at 797-99, 106 S.Ct. 3220 (acknowledging the respondent did not seek review of the administrative proceedings in the Tennessee courts).

Quinn, 330 F.3d at 1328-29.

The court relied upon the Elliott case, decided by the United States Supreme Court in 1986. The question before the Elliott Court was whether the findings of a state Administrative Law Judge was entitled to preclusive effect in federal court, where the claims before the federal court included "discrimination claims under various civil rights laws, including Title VII of the Civil Rights Act of 1964 . . . ." University of Tennessee v. Elliott, 478 U.S. at 790, 106 S.Ct. at 3221. While noting that 28 U.S.C. § 1738 was inapplicable to unreviewed state administrative fact-finding, the Court concluded that the Sixth Circuit Court of Appeals was correct in holding that "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." 78 U.S. at 796, 106 S.Ct. at 3225.

Such a finding is consistent with the requirement to first present claims to the EEOC for investigation before coming to court, and then provide "substantial weight to the final findings and order made" in those proceedings. 478 U.S. at 795, 106 S.Ct. at 3224, *citing* 42 U.S.C. § 2000e-5(b). "[I]t would make little sense for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court." *Id., citing to* Kremer v. Chemical Construction Corp., 456 U.S. 461, 470, n.7, 102 S.Ct. 1883, 1891, n.7, 72 L.Ed.2d 262 (1982).

However, the Court separated out those claims brought under § 1983 and held that the principle of federalism and the policies underlying the Full Faith and Credit Clause supports fashioning a federal common-law rule of preclusion. 478 U.S. at

798-799, 106 S.Ct. at 3226.  Thus, the Court held "that when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Elliott, 478 U.S. at 799, 106 S.Ct. at 3226 (citations omitted).

In the Quinn case cited by Defendant, there was a judicial decision rendered by a court of competent jurisdiction, the case was based on a § 1983 action, and procedurally, the court was considering a summary judgment motion, not a motion to dismiss.  Those distinctions are of primary importance in this case.  This case is not based on § 1983, but on Title VII claims which are not precluded from review. Moreover, Defendant's argument would be appropriate for review on summary judgment, but not appropriate for consideration at the motion to dismiss stage of litigation.[2]

**RECOMMENDATION**

Accordingly, it is respectfully **RECOMMENDED** that Defendant's motion to dismiss, doc. 11, be **GRANTED** as to the age discrimination claim, but otherwise be

---

[2] Analysis of a motion to dismiss is generally limited to the face of the complaint and any attachments.  Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1368-69 (11th Cir. 1997), citing 5 Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 1356 at 590-92 (1969) (Wright & Miller).  Attaching exhibits to a motion to dismiss would generally require conversion to a summary judgment motion.

**DENIED**, that Defendant be **ORDERED** to file an answer to the amended complaint,

doc. 5, and the case be **REMANDED** for further proceedings.

      **IN CHAMBERS** at Tallahassee, Florida, on March 19, 2010.


          s/     William C. Sherrill, Jr.
         **WILLIAM C. SHERRILL, JR.**
         **UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**