IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**LYNETTE GINN BROWN,**

    **Plaintiff,**

v.                                       CASE NO.  4:09-cv-171-RS-CAS

**FLORIDA DEPARTMENT OF HIGHWAY
SAFETY AND MOTOR VEHICLES,**

    **Defendant.**

_____/

## ORDER

Before me is Defendant's Motion to Disqualify Plaintiff's Counsel (Doc. 139) and Plaintiff's Response (Doc. 146).  Defendant has moved to disqualify the plaintiff's law firm and attorney Ashley Moore because the firm entered a relationship with Moore, who worked on this very case as an attorney for Defendant.  The attorney herself of course cannot work on the case or assist the plaintiff's law firm in its prosecution of the case.  *See* R. Regulating Fla. Bar 4-1.9 & 4.1-11.  The attorney and the firm recognize this.  But the firm's relationship with the attorney disqualifies the entire firm only if the attorney is "associated" with the firm.  *Id*. at R. 4-1.10 & R. 4-1.11(b).  The relief requested in Defendant's Motion is **DENIED** because the firm and the attorney entered only an outsourcing relationship that did not rise to the level of an association.

The Rules Regulating the Florida Bar govern attorney conduct in this district except when federal law or court rules provide otherwise.  *See* N.D. Fla. Loc. R. 11.1(E)(1).  Federal law and court rules do not provide more stringent standards than the Florida Bar rules in these circumstances, Plaintiff's law firm may stay in the case if the Florida Bar rules do not prohibit it from doing so.

The attorney Ashley Richardson Moore was an Assistant Attorney General for the Office of the Attorney General of the State of Florida.  She represented Defendant and worked on this case.  Rules 4-1.9 and 4.1-11 make clear that Ms. Moore cannot now represent the plaintiff, use to the defendant's disadvantage information obtained while representing the defendant, or reveal information— obtained while representing the defendant—to the plaintiff or the plaintiff's law firm or for that matter to anyone else.  Rule 4-1.9 provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;
>
> (b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or
>
> (c) reveal information relating to the representation except as these rules would permit or require with respect to a client.

R. Regulating Fla. Bar  4-1.9.

Rule 4-1.11(a) provides:

**Representation of Private Client by Former Public Officer or Employee.**
A lawyer who has formerly served as a public officer or an employee of the government:
(1) Is subject to rule 4-1.9(b) and (c); and
(2) Shall not otherwise represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation.

Ms. Moore left employment at the OAG to work at Sniffen & Spellman, P.A.  For personal and family reasons, Ms. Moore resigned her associate position with the Sniffen firm and went to work instead for the firm of Marie A. Mattox, P.A.  The relationship was not a typical associate relationship.  Ms. Moore was to work from home preparing summary-judgment responses on specific cases as assigned.  There was some prospect that in the future Ms. Moore might also draft complaints.  Ms. Moore was to be paid a set hourly rate without the health and retirement benefits available to attorneys employed at the firm's offices.  The firm and Ms. Moore did not address how long the relationship would last and did not define the relationship with precision.  This was a relationship of indefinite duration, terminable at will by either side, with no expectation that Ms. Moore would ever have client contact or responsibility for cases beyond drafting papers for review by another attorney.  There was no expectation that Ms. Moore would advance to a different or higher position within the firm.

The Mattox firm has represented the plaintiff in this case from the outset. Before entering the relationship with Ms. Moore, the firm gave little attention to the possibility that doing so would disqualify the firm from handling this case and others on which Ms. Moore had worked. The firm attorney handling both this case and the hiring of Ms. Moore was Ms. Mattox herself. She assumed with little analysis that because Ms. Moore would not work on or assist with this case, there would be no issue. It is uncontested that Ms. Moore has not worked for the Mattox firm on this case and has not violated Rule 4-1.9.

But Rule 4-1.9 is not the only relevant provision. Rule 4-1.10(b) addresses the imputed disqualification of an entire firm when it hires an attorney who is disqualified from working on a case under Rule 4-1.9. The imputed-disqualification rule provides:

> **Former Clients of Newly *Associated* Lawyer.** When a lawyer becomes *associated* with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter.

R. Regulating Fla. Bar 4-1.10(b) (emphasis added). Screening an associate who previously represented a client with adverse interests while the associate was in private practice—sometimes referred to as erecting a "Chinese wall"—does not prevent a firm's imputed disqualification. *Compare id*. (making no provision for

screening), *with id.* at R. 4-1.11(b)(1) (allowing screening when the associate previously represented a client with adverse interests while the associate was a public employee).

Under the plain language of Rule 4-1.10(b), the Mattox firm is disqualified if Ms. Moore became "associated" with the firm. The meaning of "associated" is not completely clear. But one thing *is* clear: not every lawyer who is paid by a law firm to do work of a legal nature is "associated" with the firm. Thus, for example, a firm can outsource research or other support services so long as the firm complies with any applicable requirements on billing and on disclosures to the client. *See*, *e.g.*, , ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 451 (2008) (discussing the lawyer's obligation when outsourcing legal and nonlegal support services); ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 420 (2000) (discussing the surcharge to the client for use of a contract lawyer); *see also* ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 356 (1988) (discussing temporary lawyers). An attorney to whom work is outsourced—for example, an attorney who contracts to do research or draft pleadings from the attorney's own premises on the attorney's own schedule—ordinarily is not an associate.

There was a time when relationships like this were rare. But that is no longer so. Indeed, for reasons like those that motivated Ms. Moore, and for

reasons that are similar but far less compelling, an increasing number of attorneys provide legal services in nontraditional settings. A rigid system that prevented the practice would serve little purpose.

Determining whether an attorney is associated or unassociated requires an analysis of all the circumstances. No one factor is determinative in every case. Here Ms. Moore works only from home, does only work for review by another attorney of a kind that can properly be outsourced, has no client contact or expectation of advancement, and does not receive the health and retirement benefits the firm makes available to associates. Ms. Moore works only for the Mattox firm—it can provide as much work as she currently wishes to do—but Ms. Moore is free to do contract work for others as well, if at any time she chooses to do so. In substance, this is an outsourcing relationship. The Rule 4-1.10 imputed-disqualification provision does not apply.

Defendant also contends that plaintiff's law firm should be disqualified under R. Regulating Fla. Bar 4-1.11(b) which states:

> **Representation by Another Member of the Firm.** When a lawyer is disqualified from representation under subdivision (a), no lawyer in a firm with which that lawyer is *associated* may knowingly undertake or continue representation in such a matter unless:
> (1) The disqualified lawyer is timely screened from any participation in the matter and is directly apportioned no part of the fee therefrom; and
> (2) Written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.

(emphasis added).  This rule also required that Ms. Moore be associated with plaintiff's law firm, and as discussed above, she is not.  Therefore, the Rule 4-1.11 imputed-disqualification provision does not apply.

In reaching this conclusion, I have not overlooked two additional considerations.  First, some superficial indicia cut the other way.  Ms. Moore obtained a Mattox-firm email address, called herself an associate and used the firm's physical address when she updated her Florida Bar filing, and received a first paycheck that treated her as an employee, not as an independent contractor.  When the disqualification issue arose, the firm and Ms. Moore walked some of this back, giving the impression of an attempted cover-up.  But the substance of the relationship is much more important than where the attorney gets her email or whether the firm pays her employment and Medicare taxes.  In substance, the firm has outsourced work to Ms. Moore.

Second, Defendant's lay representatives are concerned that Ms. Moore sat in on confidential discussions and now has a relationship with the plaintiff's law firm.  The concern is understandable.  But Ms. Moore has an obligation to maintain the defendant's confidences.  For all that appears in this record, Ms. Moore has complied with her obligation and will continue to do so.  This order mandates it.  A cynic might doubt an attorney's willingness to comply with an obligation of this kind, but a knowledgeable observer with full knowledge of the profession and the

circumstances would not.  Defendant's interests must be protected, but Plaintiff also has an interest at stake here: the interest in being represented by the attorney she has chosen.  *That* attorney has not represented the defendant and has no access to the defendant's confidential information.

The plaintiff's law firm is not disqualified.

For these reasons,

IT IS ORDERED:

1.  The Motion to Disqualify Counsel (Doc. 139) is **DENIED**.

2.  The attorney Ashley Richardson Moore must not assist in any way in representing the plaintiff in this case, must not use information relating to this case to the disadvantage of the plaintiff, and must not reveal information relating to her representation of the defendant except as the Rules Regulating the Florida Bar explicitly permit or require.  Ms. Moore and Marie A. Mattox, P.A.—including any representative of that firm—must not communicate about this case at all, except as necessary for any further litigation or appeal on the disqualification issue or as necessary to ensure that Ms. Moore is appropriately screened from this case.  Any communication necessary for any further litigation or appeal on the disqualification issue or necessary to ensure that Ms. Moore is appropriately screened must not touch upon the merits or any confidential information obtained by Ms. Moore during her representation of the defendant.

3.     The stay is lifted, and all previous deadlines remain unchanged.


**ORDERED** on October 5, 2012.

                                    **/s/ Richard Smoak**
                                    **RICHARD SMOAK**
                                    **UNITED STATES DISTRICT JUDGE**